UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ISAAC LEE HUNTER,

              Petitioner,

**DECISION AND ORDER**
No. 04-CV-0655(VEB)

-vs-

H. MCCARTHY GIPSON,
Superintendent of Erie County Holding Center "Jail"

              Respondent.
_____

## I.   Introduction

Petitioner Isaac Lee Hunter ("Hunter" or "petitioner") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on or about August 11, 2004, alleging that he was improperly denied bail and that various other violations of his constitutional rights occurred while he was being held pending a determination as to whether was mentally competent to stand trial on certain criminal charges. *See* Docket No. 1. Respondent answered the petition on July 25, 2005, asserting that petitioner's claims were unexhausted because he had a state habeas corpus proceeding pending at the time.  In any event, respondent argued, they were without any basis in the record. On April 30, 2007, petitioner filed a document titled "Amended Petition for Writ of Habeas Corpus." *See* Docket No. 14. Respondent moved to dismiss the petition and "Amended Petition" on May 22, 2007, arguing that Hunter's claims are moot because the indictment against petitioner has been dismissed. Hunter has not opposed respondent's motion. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c)(1).

## II.   Factual Background and Procedural History

Hunter was arraigned in Erie County Court of New York State Supreme Court under an indictment charging him with four counts of criminal possession of a weapon in the third degree and one count of unlawful possession of marijuana. Prior to indictment, the local magistrate had issued an order directing Hunter to be tested for mental competency to stand trial. Two examiners concluded that as a result of severe mental illness, Hunter lacked the capacity to understand the criminal proceedings against him or to assist meaningfully in his own defense, and therefore was incompetent to stand trial. A third examiner, however, concluded that Hunter was competent.

After arraignment, the County Court ordered another competency examination. Two psychiatric examiners found that Hunter was not competent to proceed and, on September 25, 2003, the County Court issued a commitment order pursuant to New York Criminal Procedure Law ("C.P.L.") § 730.50(1), and Hunter was ordered confined at the Mid-Hudson Forensic Psychiatric Center.

On January 5, 2004, the psychiatric facility notified the County Court that Hunter was mentally fit to proceed. Upon his appearance in court on April 26, 2004, however, the County Court issued another order for a psychiatric examination into Hunter's mental competency. Following a hearing held on July 22, 2004, the County Court ordered Hunter committed again pursuant to C.P.L. § 730.50. Hunter was returned to the psychiatric facility for further treatment.

The psychiatric facility, on September 15, 2004, notified the court that Hunter was competent to proceed. On December 6, 2004, the County Court ordered another mental health evaluation of Hunter. Thereafter, two reports were issued by psychiatric examiners opining that Hunter was incompetent to proceed to trial. The County Court issued another commitment order

on February 9, 2005.

On March 21, 2005, the psychiatric facility notified the court that Hunter was competent to proceed and he was returned to the custody of Erie County. As of the time respondent answered the petition, on July 25, 2005, it appeared that Hunter had been returned to the psychiatric facility for treatment re-evaluation.

Based on a letter from Hunter's state court defense attorney, John Nuchereno, Esq. ("Attorney Nuchereno") submitted in connection with his "Amended Petition", it appears that on October 2, 2006, Hunter had another competency hearing before the County Court. The judge found that petitioner was not fit to proceed and ordered his continued retention on October 24, 2006. This order authorized his retention until February 8, 2007. On January 29, 2007, an application for an order of retention for two additional years was made by the director of the forensic psychiatric facility.

On February 27, 2007, Attorney Nuchereno appeared on behalf of Hunter in the County Court and obtained a dismissal of the indictment on the basis that the time petitioner had spent in custodial detention was equal to two-thirds of the authorized maximum term of imprisonment (seven years) for the highest class felony with which he was charged in the indictment. *See* New York Criminal Procedure Law ("C.P.L.") § 730.50(3), (4). The County Court issued the order on March 12, 2007, and the indictment was dismissed with prejudice. *See* N.Y. Crim. Proc. Law § 730.50(4). Following dismissal of the indictment, Hunter was transferred on May 10, 2007, from the Mid-Hudson Forensic Psychiatric Center to the Buffalo Psychiatric Center pursuant to an

order of civil commitment under New York's Mental Hygiene Law.[1] Hunter was represented

In his "Amended Petition" (Docket No. 14), dated December 2006, but received by the Court on April 30, 2007. In the letter from Attorney Nuchereno, which he has attached to the "Amended Petition", Hunter has written that he "request [sic] for → AMENDED Petition for a Writ of Habeas Corpus be filed regarding → Case → 04-CV-0655Sc. For to [sic] challenge Civil Retention." *See* Docket No. 14. Also, Hunter indicates that he is now seeking relief under 28 U.S.C. § 2241 instead of 28 U.S.C. § 2254. *See id.*

On May 22, 2007, respondent filed a motion to dismiss the petition. Respondent contends that due to the dismissal of the indictment,"petitioner is not being held by virtue of a commitment by the state court" and "there is no possibility that any collateral legal consequences will be imposed on the basis of [a] challenged conviction." Resp't Mem. at 2-3, ¶¶9-10. Respondent also asserts that petitioner's attempt to amend his petition is improper because the basis for the original petition has been rendered moot by the dismissal of the indictment. *Id.* at 3, ¶10.

**II.    Discussion**

---

[1]    Article 9 of New York's Mental Hygiene Law ("M.H.L.") is the state's general civil commitment statute, and applies to all free persons in New York State. *State ex rel. Harkavy v. Consilvio*, 11 Misc.3d 1053 (N.Y. Sup. Ct. 2006). Pursuant to M.H.L. § 9.27(a), certain designated applicants may seek the involuntary hospitalization of an individual alleged to be mentally ill upon the certification of two examining physicians attesting to the need for psychiatric care and treatment. Thereafter, a member of the psychiatric staff of the hospital to which admission is sought is required to examine the patient and determine whether he or she is in need of involuntary hospitalization. If so, the patient is committed for an initial period of sixty days. This section provides for an involuntary admission to a hospital, based upon the certificates of two examining physicians, accompanied by an application. Under M.H.L. § 9.31, the director of the hospital may retain the patient for a period of up to sixty days, unless the patient submits a written notice requesting a post-commitment hearing on the need for involuntary care and treatment. In such event, the director of the hospital is mandated to forward a copy of the notice to the Court, which is then required to schedule a hearing. The statute further provides that upon such hearing date, "the court shall hear testimony and examine the person alleged to be mentally ill, if it be deemed advisable in or out of court." N.Y. MENTAL HYG. LAW § 9.31(c)). Section 9.31(c) instructs a court in receipt of such a request to fix the date of the hearing at a time not later than five days from the date such notice is received by the court.

### A. Legal Principles

#### 1. Mootness

"Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'" *Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A case becomes moot "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Id.* at 551 (2d Cir.1989) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (*per curiam*)); *see also Jefferson v. Abrams*, 747 F.2d 94, 96 (2d Cir. 1984). When this occurs, the Constitution's case or controversy requirement is not satisfied and a federal court lacks subject matter jurisdiction over the action. U.S. CONST. Art. III, § 2; *Blackwelder*, 866 F.2d at 550; *Jefferson*, 747 F.2d at 96. The concern underlying the mootness doctrine is that "when the challenged conduct ceases such that '"there is no reasonable expectation that the wrong will be repeated,"' *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), then it becomes impossible for the court to grant '"any effectual relief whatever" to [the] prevailing party,' *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))." *County of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000).

#### 2. Propriety of Habeas Corpus to Challenge an Order of Involuntary Civil Commitment

The Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 423 (1979) (citations omitted). However, a statute allowing for involuntary civil commitment does not violate substantive due process "when (1) the confinement takes place pursuant to proper procedures and evidentiary standards, (2) there is a finding of

dangerousness either to one's self or to others, and (3) proof of dangerousness is coupled with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'" *Kansas v. Crane*, 534 U.S. 407, 409-10 (2002). Petitioning for a writ of habeas corpus, after fully exhausting state court remedies, is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment to a psychiatric institution. *Buthy v. Commissioner of Office of Mental Health of N.Y.S.*, 818 F.2d 1046, 1051 (2d Cir. 1987) (citing, *inter alia*, *Souder v. McGuire*, 516 F.2d 820, 823 (3d Cir. 1975) ("There is no question about the appropriateness of habeas corpus as a method of challenging involuntary commitment to a mental institution."); *O'Beirne v. Overholser*, 287 F.2d 133, 136 (D.C. Cir. 1960) ("Habeas corpus is the traditional means of seeking release from illegal confinement. It is the normal means in this jurisdiction of testing the legality of detention in a mental hospital, whether based on civil or criminal proceedings.")).

    **B.**    **Analysis**

In his original Petition (Docket No. 1), Hunter alleges that he was denied his constitutional rights while he was confined pending a determination as to whether he was competent to proceed to trial on the indictment against him. The claims in Hunter's original Petition (Docket No. 1) must be dismissed because they have been rendered moot due to the dismissal of the criminal indictment pursuant C.P.L. § 730.50. As noted above, the indictment was dismissed because the order of retention based on Hunter's mental incapacity expired. This dismissal pursuant to C.P.L. § 730.50 was with prejudice, and as such "constitutes a bar to any further prosecution of the charge or charges contained in such indictment." N.Y. CRIM. PROC. LAW § 730.50(4). Hunter cannot be confined again for the purpose of evaluating his competency

to stand trial on these criminal charges, and therefore the claims in the original petition have been mooted.

The Court now turns to the claims raised in the "Amended Petition" (Docket No. 14). Hunter indicates in one sentence in a document attached to the "Amended Petition" that he is challenging the current order of involuntary civil commitment pursuant to New York state law. *See* N.Y. MENTAL HYG. LAW § 9.31. As noted above, petitioner is in the custody of the state, albeit not as a prisoner, under a civil order of involuntary commitment. A petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in such cases is an appropriate means of legal redress, and a federal district court has jurisdiction to hear those claims provided that the petitioner has exhausted his state court remedies. *See Buthy v. Commissioner*, 818 F.2d at 1051; *Draper v. Bowen*, No. CIV-06-1333-HE, 2007 WL 433237, at *2, n.3 (W.D. Okla. Feb. 2, 2007). However, Hunter essentially restates the facts and claims that he raised in his original Petition (Docket No. 1) relating to the pre-trial orders of retention, which have been rendered moot by the dismissal of the indictment with prejudice; he mentions nothing about the current order of commitment.

Thus, pages 1-4, 7 and 9-10 of the fourteen-page "Amended Petition" (Docket No. 14) appear to detail the Hunter's version of the factual circumstances surrounding his arrest on weapons possession charges; he alleges that he was entrapped by the Erie County Sheriff's Department and illegally arrested. On page five, Hunter claims that the trial court denied his "Confrontation Clause" rights by "bar[ring] Petitioner . . . and his relatives and friends entrance to their court room . . ."; that the state instituted criminal proceedings against him in "bad faith"; and the state "suppressed material evidence, and deni[ed] [him] of the right to present witnesses

in his own behalf . . . and deprive[d] [him] of right to jury trial." *See* "Amended Petition" (Docket No. 14).

Pages 6 and 8 of the "Amended Petition" alleges that from May 21, 2002, until May 29, 2002, that "unknown – sheriff's deputys [sic] . . . at the Erie County Holding Center 'Jail'" treated him "with deliberate indifference . . . to [his] injuries and medical needs" and used "unnecessary force."

On pages 6 and 9-13 of the "Amended Petition" (Docket No. 14), Hunter also claims that Judge DiTullio "intentional [sic] deliberately stonewalled his jury trial, held him without bail, or bail hearings, denied his family and friends entrance into" the courtroom. Hunter contends that there has been a conspiracy by state officials, including the trial court, with his assigned attorneys to have him "found, not fit to proceed to a jury trial. [sic] for the intention [sic] purposes of wilfully deprivation [sic] of right to jury trial, and deprivation of the right to compulsory process for obtaining witnesses in his behalf." Hunter asserts that all of these illegal actions against him by the trial court, his attorneys, the prosecution, and the police were taken because he "has repeatedly rejected and refused their plea deals [sic] offers."

It is plain from the "Amended Petition" that all of Hunter's claims relate to his confinement pursuant to the earlier orders of retention that were issued while he was being evaluated as to his mental competency to stand trial; the crux of his claims appears to be that he was deprived of his right to proceed to a jury trial on the criminal charges against him and prove his innocence. However, the indictment against him has been dismissed, and there is no possibility that he will ever be re-indicted with regard to the same charges and face a criminal

trial. Accordingly, all of the allegations and claims in the "Amended Petition" are moot.[2]

### III.   Conclusion

Because all of the habeas claims petitioner raises relate to the orders of commitment that preceded the dismissal, with prejudice, of the indictment against him, they are moot. For the foregoing reasons, therefore, Court grants respondent's motion (Docket No. 15) to dismiss the Petition (Docket No. 1) and Amended Petition (Docket No. 14) with prejudice.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   February 14, 2008
         Buffalo, New York.

---

[2]   Even if Hunter had stated any colorable claims relating to the current order of civil commitment, they would have to be dismissed without prejudice due to his failure to exhaust state remedies. There is no indication in Hunter's pleadings that he has utilized any of the available state procedures, such as a habeas corpus proceeding or an application for a post-commitment hearing pursuant to M.H.L. § 9.31, for challenging the civil order of commitment against him. In fact, Hunter concedes that he has not exhausted his state court remedies with regard to any of his claims. *See* "Amended Petition" at 5 (Docket No. 14).